UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IN RE WHISTLER ENERGY II, LLC

CIVIL ACTION

NO: 17-5470

SECTION: "H"(1)

## ORDER AND REASONS

Before the Court is an appeal by Nabors Offshore Corporation from a decision of the United States Bankruptcy Court for the Eastern District of Louisiana. For the following reasons, the decision of the bankruptcy court is AFFIRMED.

## BACKGROUND

This matter arises out of the Chapter 11 bankruptcy of Whistler Energy II, LLC ("Whistler"). Its creditor, Nabors Offshore Corporation ("Nabors"), alleges that the bankruptcy court erred in disallowing much of its administrative expense priority claim under 11 U.S.C. § 503(b)(1)(A) for

1

materials and services that it provided to Whistler before and after it filed for bankruptcy.

Whistler owns and operates an offshore oil and gas platform with several producing wells. On February 25, 2014, Nabors and Whistler entered into a contract under which Nabors agreed to provide the equipment and personnel necessary to drill additional wells and perform auxiliary operations and services for Whistler (the "Contract"). Specifically, it agreed to provide the MODS 201 platform drilling rig, four engines with generators, a rig crane, nine personnel buildings or living quarters, and 31 crewmembers. Nabors charged a daily rate for these materials and services. On July 16, 2014, the Contract was amended to add two additional living quarters and two cranes for an additional fee.

In November 2015, Nabors began drilling the A-13 Well on Whistler's platform. On March 10, 2016, a Nabors employee suffered a fatal injury while working on the platform before the A-13 Well was completed. As a result, the Bureau of Safety and Environmental Enforcement ("BSEE") ordered Whistler to shut-in drilling operations but allowed it to continue producing existing wells. On March 26, 2016, three of Whistler's creditors filed an involuntary bankruptcy petition against it. At some point thereafter, Whistler decided to temporarily abandon the well, and it paid Nabors to complete the work, which it did on June 20.

On July 25, the bankruptcy court entered an order rejecting the Contract between Nabors and Whistler effective June 20, and Whistler asked Nabors to provide a demobilization plan for its drilling rig and equipment. BSEE

approved the demobilization plan on October 20, and Nabors began demobilizing its equipment from Whistler's platform.

In the bankruptcy action, Nabors filed a Motion for Allowance of Administrative Expense Claim Pursuant to 11 U.S.C. § 503(b) for Unpaid Services and Equipment Provided to Debtor Post-Order for Relief and for Demobilization-Related Costs, which was heard by the bankruptcy court in December 2016. Nabors sought, *inter alia*, a pre-demobilization administrative claim in the amount of $4.7 million and a demobilization administrative priority claim in the amount of $3.25 million. The bankruptcy court ultimately held that Nabors was only entitled to an administrative priority claim for the cost of pre-demobilization services between June 20 and October 20, 2016 that Whistler had requested. It found that Nabors was not entitled to an administrative priority claim for demobilization expenses because such were merely a consequence of the rejection of the Contract. Nabors was allowed an administrative priority claim in the amount of $897,024 and a general unsecured rejection damages claim in the amount of $6,070,901.98.

Nabors now appeals the bankruptcy court's decision, arguing that it improperly applied 11 U.S.C. § 503. The debtor-in-possession opposes.

## **LEGAL STANDARD**

Where a district court sits as an appellate court in a bankruptcy case, "[t]he bankruptcy court's findings of fact are reviewed under a clear error

standard, while conclusions of law are reviewed de novo."[8] Mixed questions of law and fact are reviewed de novo.[9]

## LAW AND ANALYSIS

Pursuant to § 365 of the Bankruptcy Code, Whistler's rejection of the Contract with Nabors acts as a breach of the contract from the date of the filing of the petition and leaves Nabors with an unsecured claim. Nabors contends, however, that its claim should be treated as an administrative priority claim because the services and materials that it provided were necessary and beneficial to Whistler. Section 507(a)(1) of the bankruptcy code establishes that administrative expenses incurred in bankruptcy are given priority in distribution. These administrative expenses include "the actual and necessary costs and expenses of preserving the estate."[10] In order to qualify as an "actual and necessary cost," a claim "must have arisen post-petition and as a result of actions taken by the trustee that benefitted the estate."[11] Nabors seeks administrative priority for its pre-demobilization and demobilization claims, alleging that they are actual and necessary costs that benefitted the estate.

### A. Pre-Demobilization Claims

The pre-demobilization claim spans the period between the rejection of the Contract on June 20 and the beginning of demobilization on October 20. The bankruptcy court found that a key requirement for proving an administrative priority claim on a pre-petition contract is that the debtor must

---

[8] *In re* Amco Ins., 444 F.3d 690, 694 (5th Cir. 2006).
[9] *In re* ASARCO, L.L.C., 702 F.3d 250, 257 (5th Cir. 2012).
[10] 11 U.S.C. § 503(b)(1).
[11] *In re* Jack/Wade Drilling, Inc., 258 F.3d 385, 387 (5th Cir. 2001).

4

have induced performance from the creditor after the filing of the petition. The court held then that Nabors was entitled to an administrative priority claim only for the services specifically requested by Whistler between June 20 and October 20.

> The bankruptcy court made the following findings of fact:
>
> There was lengthy testimony as to the work performed by Nabors between June 20 and October 20. Exhibit 9, introduced into evidence, contains all of the reports that detail the services provided by Nabors beginning on the petition date, March 24, 2016. Nabors states that it performed maintenance services and assisted other Whistler contractors with the performance of production duties, which in Nabors' view constitutes a benefit to the estate. The court finds that with the exception of the services specifically requested by the debtor-in-possession during this time (and which the debtor-in-possession agrees that it asked for and has agreed to pay for), the services provided are akin to Nabors being available to provide services, as opposed to Nabors actually providing services to the debtor-in-possession. Because the requirement for an administrative priority expense is that the creditor provide the debtor-in-possession with actual and necessary services that benefitted the estate, that the services were induced by the debtor-in-possession, the court finds that Nabors did not prove at trial that it provided services from June 20 to October 20 such that it is entitled to receive administrative priority at its day rate during that period.
>
> Although Nabors put on some evidence that it was induced by the debtor-in-possession to leave its rig on the platform after the rejection date, the court finds that evidence shows that Nabors and the debtor-in-possession were simply engaged in post-petition negotiations that are typical of the bankruptcy process. There were discussions about trying to classify Nabors as a critical vendor that did not bear fruit. What is clear to the court is that Nabors was sufficiently unsure of its position vis-a-vis the debtor-in-possession that it was motivated to file a motion to assume or reject the

5

drilling contract on June 17, 2016. When the debtor-in-possession filed its response three days later on June 20, 2016 stating that it planned to reject the Nabors drilling contract, it should have been clear to Nabors that the contractual relationship would not be continued. Based on the evidence presented to the court in this case, after June 20, Nabors was on notice that the debtor-in-possession had chosen to reject the drilling contract but has not shown that it was induced to stay and perform under the contract after the June 20, 2016 rejection date.[12]

The bankruptcy court held that Nabors' administrative priority claim was limited to those services that Whistler actually requested. It found that Whistler requested use of Nabors' cranes, two of the living quarters, and overtime pay for Nabors' employees and later quantified the claim in the amount of $897,024.[13] Nabors argues that additional materials and services should have been included in its administrative priority claim, including the cost of its personnel, the additional nine living quarters, the generators that powered the living quarters, demobilization equipment, and the installation of replacement cranes.

Nabors misconstrues the bankruptcy court's holding, complaining that it limited the administrative claim to amounts that Whistler agreed to pay at trial. To the contrary, however, the bankruptcy court expressly held that, "Nabors should receive an administrative priority claim for the services Whistler asked it to provide."[14] The bankruptcy court correctly stated the law applicable here. "To serve the policy of the priority, inducement of the creditor's

---

[12] Doc. 2-1, p. 328–30.
[13] The fact that this amount is also the amount that Whistler agreed to pay at trial does not undermine the court's holding.
[14] Doc. 2-1, p. 333.

performance by the debtor-in-possession [post petition] is crucial to a claim for administrative priority in the context of the furnishing of goods or services to the debtor."[15] Nabors has not pointed this Court to any case or law suggesting that the finding of an administrative priority claim does not require that the debtor-in-possession induce performance. Indeed, courts have stated that, "[B]enefit to the debtor-in-possession alone is not sufficient to warrant entitlement to an administrative claim priority as it would be contrary to this policy reason for allowing the priority."[16]

Nabors also has not shown this Court that the bankruptcy court erred in its factual findings regarding which materials and services were requested by Whistler after the bankruptcy petition was filed. Nabors has not pointed to any evidence in the record indicating that Whistler requested the use of Nabors' materials and services beyond those identified by the bankruptcy court. Although there is evidence that Nabors provided, and Whistler used, additional materials and services after the bankruptcy petition was filed, there is no evidence that Whistler requested their use. Accordingly, the bankruptcy court did not err in finding that Nabors' administrative priority claim was limited to the $897,024 of services and materials that it requested post-petition.

### B. Demobilization

Next, Nabors argues that it is entitled to an administrative priority claim for the cost of demobilization, or the removal of its rig from Whistler's platform.

---

[15] *In re* Jartran, Inc., 732 F.2d 584, 587 (7th Cir. 1984); *see In re* E. Texas Steel Facilities, Inc., 117 B.R. 235, 243 (Bankr. N.D. Tex. 1990); *In re* Mammoth Mart, Inc., 536 F.2d 950, 954 (1st Cir. 1976).

[16] *In re* Enron Corp., 279 B.R. 79, 86 (Bankr. S.D.N.Y. 2002).

The bankruptcy court rejected this request, holding that although Whistler requested the demobilization, it was not a benefit to the bankruptcy estate. It found that demobilization was simply a result of the rejection of the Contract. The court found that Whistler's only obligation to make the well safe was abandoning the well, which had already occurred when demobilization began.

Nabors argues that it should be entitled to an administrative priority claim for the demobilization because it brought Whistler in compliance with federal statutes and BSEE regulations. Nabors argues that BSEE regulations require Whistler to remove the drilling rig from its platform. In making this argument, Nabors points to the BSEE regulations regarding decommissioning to argue that upon installation of the drilling rig on its platform, Whistler incurred a decommissioning obligation to remove the rig.[17] There is no indication, however, that Whistler was decommissioning or had any plans to decommission its platform.[18] Indeed, there were still wells on the platform producing oil and gas. Rather, Nabors was simply demobilizing its equipment from the platform. Nabors has not shown that Whistler had an obligation to demobilize Nabors' equipment from its platform when the platform was not being decommissioned. Accordingly, Nabors has not shown that Whistler benefited from demobilization of the rig. This Court agrees with the bankruptcy court's finding that demobilization was simply the logical result of the rejection of the Contract. The bankruptcy court did not err in finding that

---

[17] 30 C.F.R. § 250.1703.
[18] "Decommissioning is the process of ending offshore oil and gas operations at an offshore platform and returning the ocean and seafloor to its pre-lease condition." *Frequently Asked Questions*, BUREAU OF SAFETY AND ENVIRONMENTAL ENFORCEMENT, https://www.bsee.gov/newsroom/library/frequently-asked-questions/Decommissioning%20FAQs#faq-1.

the demobilization was not beneficial to the estate and that Nabors was not entitled to an administrative priority claim for its cost.

## **CONCLUSION**

For the foregoing reasons, the order of the bankruptcy court is AFFIRMED.

New Orleans, Louisiana this 20th day of July, 2018.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**